UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOMAS MICHAEL KING, individually and on behalf of all others similarly situated,

                Plaintiff,

- against -

MYC RESORT, LLC d/b/a MONTAUK YACHT CLUB,

                Defendant.

Case No. 14-CV-6235 (LDW)(GRB)


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12

STEVEN J. MOSER, P.C.
Steven John Moser (SM 1133)
3 School Street, Suite 207B
Glen Cove, New York 11542
(516) 671-1150
(516) 882-5420 (fax)

*Attorneys for Named Plaintiff and the Putative Class*

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    1. THE HOSPITALITY INDUSTRY SPREAD OF HOURS REGULATION APPLIES TO ALL HOTEL WORKERS, EVEN THOSE EARNING WELL ABOVE THE MINIMUM WAGE .................................................................................................................................. 2

        1.1. Prior to January 1, 2011 the New York Labor Law contained three spread of hours regulations, all of which which applied only to minimum wage workers. ............................................................................................................... 2

        1.2. Effective January 1, 2011 the New York Labor Law contains two (2) spread of hours regulations, one of which applies to all hotel employees, regardless of whether they earn the minimum wage. ............................................................ 3

        1.3. The Defendant's brief describes a single "spread of hours law" without discerning which regulation (§ 142-2.4 or §146-1.6) it is referring to. ............ 4

        1.4. Under the Wage Order applicable to the Montauk Yacht Club (12 N.Y.C.R.R. § 146-1.6), there is no requirement that an employee earn the minimum wage in order to be entitled to spread of hours pay. ........................ 5

    2. THE MONTAUK YACHT CLUB DOES NOT MEET THE DEFINITION OF A RESORT HOTEL BECAUSE IT IS NOT LOCATED IN AN INCORPORATED VILLAGE, AND IS THEREFORE NOT EXEMPT FROM THE HOSPITALITY INDUSTRY SPREAD OF HOURS REQUIREMENT ..................................................... 5

        1.1. An employer bears the burden of proving an exemption from the New York Labor Law, and statutory exemptions are to be narrowly construed against the employer. ............................................................................................... 5

        1.2. In order to be exempt from the Hospitality wage order as a "resort hotel", the Montauk Yacht Club must establish that it is located in a "rural community or in a city or village of less than 15,000 population." 12 N.Y.C.R.R. § 146-3.1(c)(3)(ii) and (iii). ......................................................................................... 6

        1.3. Under the New York General Construction Law § 54, "village" means "incorporated village." .......................................................................................... 6

        1.4. As a matter of law, Montauk is not a "village" ................................................ 7

        1.5. The plain language of New York General Construction Law § 54 is unambiguous, and should not be disregarded. ................................................. 8

    1.6.    Ignoring the plain meaning of the law by exempting hotels located in hamlets with a population of less than 15,000 would lead to absurd results. ............. 10

3.    UPON THE COURT'S DECISION ON THE DEFENDANT'S RULE 12 MOTION, THE PLAINTIFF REQUESTS AN ORDER COMPELLING ARBITRATION. ........... 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Angamarca v. Pita Grill 7 Inc.*, 2012 U.S. Dist. LEXIS 108322, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012) .................................................................................................................. 4, 5

*Brustein v. New Amsterdam Cas. Co.*, 135 Misc. 352, 238 N.Y.S. 313 (Sup. Ct. 1929) *rev'd on other grounds* 255 N.Y. 137, 174 N.E. 304 (1931) ............................................................ 6

*Com-Tech Assocs. v. Computer Assocs. Int'l*, 938 F.2d 1574 (2d Cir. 1991) .............................. 10

*Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005) ......................................... 3

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) ............................................................. 5

*Francarl Realty Corp. v. Town of E. Hampton*, 628 F. Supp. 2d 329 (E.D.N.Y. 2009) ............... 7

*Gottlieb v. Carnival Corp.*, 436 F.3d 335 (2d Cir. 2006) ............................................................. 7

*Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006) ............................................................... 7

*Guadalupe v. Tri-State Empl.*, 2013 U.S. Dist. LEXIS 123951 (E.D.N.Y. July 31, 2013) ............ 4

*Heng Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006) ..................................................................................................................... 3

*Jenkins v. Hanac, Inc.*, 493 F. Supp. 2d 556 (E.D.N.Y. 2007) ..................................................... 4

*Juarez v. Precision Apparel*, 2013 U.S. Dist. LEXIS 131418 (E.D.N.Y. Aug. 21, 2013) ............ 4

*Koljenovic v. Marx*, 999 F. Supp. 2d 396 (E.D.N.Y. 2014) .......................................................... 5

*Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991) .................................................................... 10

*Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508 (S.D.N.Y. 2013) ..................................... 3

*O'Keeffe v. Dugan*, 185 A.D. 53, 172 N.Y.S. 558 (App. Div. 1918) *aff'd* 225 N.Y. 667, 122 N.E. 887 (1919) .......................................................................................................................... 6

*People v. Patenaude*, 206 Misc. 347, 132 N.Y.S.2d 833 (Sup. Ct. 1954) ................................ 7, 8

*Putnam Cnty. Nat'l Bank v. Albright*, 87 Misc. 2d 391, 384 N.Y.S.2d 669 (Sup. Ct. 1976) ......... 8

*Roach v. T.L. Cannon Corp.*, 889 F. Supp.2d 364 (N.D.N.Y. 2012) ............................................ 4

*Ruggles v. Wellpoint, Inc.*, 272 F.R.D. 320 (N.D.N.Y. 2011) ...................................................... 6

*Rui Xiang Huang v. J&A Entm't Inc.*, 2012 U.S. Dist. LEXIS 184727, 2012 WL 6863918 (E.D.N.Y. Dec. 3, 2012) ...................................................................................................... 4

*Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445 (W.D.N.Y. 2010) ............................................... 6

*Singh v. Patel*, 2013 U.S. Dist. LEXIS 72619, 2013 WL 2190153 (E.D.N.Y. May 16, 2013) .. 4, 5

*Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457 (E.D.N.Y. 2011) ..................................... 4

*Williams v. Tri-State Biodiesel, L.L.C.*, 2015 U.S. Dist. LEXIS 7926 (S.D.N.Y. Jan. 23, 2015) .. 4

*Yuquilema v. Manhattan's Hero Corp.*, 2014 U.S. Dist. LEXIS 120422 (S.D.N.Y. Aug. 26, 2014) ............................................................................................................................................. 5

**Statutes**

N.Y. Banking Law § 240(2)(b) ...................................................................................................... 8
N.Y. General Construction Law § 110 ..................................................................................... 6, 8
N.Y. General Construction Law § 54 .................................................................................. passim

N.Y. Lab. Law § 650 ................................................................................................................. 5

**Other Authorities**

N.Y.S. Dep't of Labor opinion letter dated August 26, 2009, file no. RO-08-0086. ...................... 2
New York State Department of Health, New York State Gazetteer 37 (1995) ............................... 6

**Regulations**

12 N.Y.C.R.R. § 137 ................................................................................................................. 2, 3
12 N.Y.C.R.R. § 138 ................................................................................................................. 2, 3
12 N.Y.C.R.R. § 142-2.4 ..................................................................................................... passim
12 N.Y.C.R.R. § 146 ........................................................................................................... passim
12 N.Y.C.R.R. § 146-1.6 ..................................................................................................... passim
12 N.Y.C.R.R. § 146-3.1 .............................................................................................................. 1

## PRELIMINARY STATEMENT

The Plaintiff Thomas Michael King is claiming that the Montauk Yacht Club has failed to comply with the Hospitality Industry spread of hours regulation which became effective on January 1, 2011, 12 N.Y.C.R.R. § 146-1.6.  *See* Complaint, ECF Doc. 1, ¶ 1, annexed to the Declaration of Steven John Moser as Exhibit 1.

Defendant has moved to dismiss the complaint on the basis that (1) Mr. King earned above the minimum wage and therefore is not entitled to the spread of hours premium under 12 N.Y.C.R.R. § 146-1.6, and (2) the Montauk Yacht Club is a "resort hotel" under 12 N.Y.C.R.R. § 146-3.l(c)(3) because, inter alia it is located in a "village" with a population of less than 15,000 and therefore is exempt from the spread-of-hours requirement.

The Defendant's motion fails on both points.

First, the Hospitality Industry spread of hours regulation in question (12 N.Y.C.R.R. § 146-1.6), unlike the Miscellaneous Industry regulation (12 N.Y.C.R.R. § 142-2.4), applies by its plain terms to all workers, "regardless of [the] employee's regular rate of pay."

Second, the Montauk Yacht Club is ineligible for the "resort hotel" exemption found in the Hospitality Industry Wage Order because it is not located in an incorporated village or city. When used in New York law, "[t]he term village means an incorporated village."  N.Y. General Construction Law § 54.

If the Court denies the Defendant's motion, the Plaintiff joins in the Defendant's request for an order compelling class arbitration.

1

# ARGUMENT

1. **THE HOSPITALITY INDUSTRY SPREAD OF HOURS REGULATION APPLIES TO ALL HOTEL WORKERS, EVEN THOSE EARNING WELL ABOVE THE MINIMUM WAGE.**

   1.1. **Prior to January 1, 2011 the New York Labor Law contained three spread of hours regulations, all of which applied only to minimum wage workers.**

One spread of hours regulation is found in the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. § 142[1]. According to 12 N.Y.C.R.R. § 142-2.4,

> An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which…the spread of hours exceeds 10 hours…

Prior to January 1, 2011, there were also separate wage orders for restaurants and hotels found in 12 N.Y.C.R.R. § 137[2] and 12 N.Y.C.R.R. § 138[3], respectively.

These prior regulations contained language virtually identical to the spread of hours regulation applicable to Miscellaneous Industries and Occupations found in 12 N.Y.C.R.R. § 142.2. The Restaurant spread of hours regulation stated:

> On each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required in this Part.

12 N.Y.C.R.R. § 137-1.7 (effective July 24, 2009 – December 31, 2010).

The Hotel spread of hours regulation similarly stated:

> …A nonresidential employee in an all-year hotel shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required in this Part, for any day in which the spread of hours exceeds 10.

12 N.Y.C.R.R. § 138-2.6 (effective July 24, 2009 – December 31, 2010).

---

[1] *available at* https://www.labor.ny.gov/formsdocs/wp/ CR142.pdf.
[2] *available at* https://www.labor.state.ny.us/formsdocs/wp/CR137.pdf.
[3] *available at* https://www.labor.state.ny.us/formsdocs/wp/Part138s.pdf.

These three regulations contained the common language that spread of hours pay was only required "in addition to the minimum wages otherwise required." *Id.* Prior to January 1, 2011, The New York State Department of Labor consistently opined that these "spread of hours" regulations did not apply to individuals earning sufficiently above the minimum wage. *See* N.Y.S. Dep't of Labor opinion letter dated August 26, 2009, file no. RO-08-0086.

An early decision by Judge Sand disregarded the Department of Labor's interpretation, and instead found that the spread-of-hours premium applied to workers earning above the minimum wage. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005). Within a year however, Judge Gerard E. Lynch came to an opposite conclusion in *Heng Chan v. Triple 8 Palace, Inc.*, 2006 U.S. Dist. LEXIS 15780, 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006) which adopted the Department of Labor's interpretation. The overwhelming majority of courts within the Eastern District interpreting § 142-2.4 have reached the same conclusion as Judge Lynch. *See* cases cited in Defendant's MOL at 6-9.

> **1.2. Effective January 1, 2011 the New York Labor Law contains two (2) spread of hours regulations, one of which applies to all hotel employees, regardless of whether they earn the minimum wage.**

Effective January 1, 2011, the Department of Labor consolidated the Restaurant Wage Order, 12 N.Y.C.R.R. § 137 and the Hotel Wage Order, 12 N.Y.C.R.R. § 138 into a single Hospitality Industry Wage Order, 12 N.Y.C.R.R. § 146[4]. Under the regulations, hotel workers are entitled to receive "spread of hours" compensation regardless of their regular rate of pay. *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 532 (S.D.N.Y. 2013)(citing §146-1.6). The regulation is as follows:

> Spread of hours greater than 10 in restaurants and all-year hotels…
> (a) On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate. (b) The additional hour of pay

---

[4] *available at* https://www.labor.ny.gov/ formsdocs/wp/CR146.pdf.

shall not be offset by any credits for meals or lodging provided to the employee. (c) The additional hour of pay is not a payment for time worked or work performed and need not be included in the regular rate for the purpose of calculating overtime pay. **(d) This section shall apply to all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay.**

12 N.Y.C.R.R. § 146-1.6 [emphasis supplied].

The regulation in § 142-2.4 remains in effect. Thus, since January 1, 2011 the New York Labor Law contains two (2) spread of hours regulations - § 142-2.4 and §146-1.6.

However, "the language of § 142-2.4 differs from § 146-1.6, which is a similar spread-of-hours provision that applies to employees of restaurants and all-year hotels, because § 146-1.6 explicitly extends to "all employees . . .regardless of a given employee's regular rate of pay." 12 N.Y.C.R.R. § 146-1.6(d). *Williams v. Tri-State Biodiesel, L.L.C.,* 2015 U.S. Dist. LEXIS 7926, 44 (S.D.N.Y. Jan. 23, 2015); *See also Angamarca v. Pita Grill 7 Inc.,* 2012 U.S. Dist. LEXIS 108322, 17, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012). Section 146-1.6, in contrast to 142-2.4 "explicitly provides that spread of hours pay shall apply to all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay, thereby indicating that the drafters of the regulations knew how to apply the spread or hours regulation to all wage earners [when] that was their intention." *Singh v. Patel,* 2013 U.S. Dist. LEXIS 72619, 7, 2013 WL 2190153 (E.D.N.Y. May 16, 2013)(Feuerstein, J.)(citing *Roach v. T.L. Cannon Corp.,* 889 F. Supp.2d 364, 369 (N.D.N.Y. 2012)).

### 1.3. The Defendant's brief describes a single "spread of hours law" without discerning which regulation (§ 142-2.4 or §146-1.6) it is referring to.[5]

The cases cited by the Defendant in support of its motion do not interpret the Hospitality Wage Order found in § 146. They interpret the Minimum Wage Order for Miscellaneous Industries and Occupations (§ 142), which is inapplicable to this case. *See Sosnowy v. A. Perri*

---

[5] Def. MOL, 6-9.

*Farms, Inc.,* 764 F. Supp. 2d 457, 472 (E.D.N.Y. 2011)(Def. MOL at 2, 7, 8); *Juarez v. Precision Apparel,* 2013 U.S. Dist. LEXIS 131418, 33 (E.D.N.Y. Aug. 21, 2013)(Def. MOL a 7); *Jenkins v. Hanac, Inc.,* 493 F. Supp. 2d 556, 556 (E.D.N.Y. 2007)(Def. MOL at 7); *Guadalupe v. Tri-State Empl.,* 2013 U.S. Dist. LEXIS 123951, 15 (E.D.N.Y. July 31, 2013)(Def. MOL at 7); *Rui Xiang Huang v. J&A Entm't Inc.,* 2012 U.S. Dist. LEXIS 184727, 2012 WL 6863918 (E.D.N.Y. Dec. 3, 2012)(Def. MOL at 7).

    **1.4.** **Under the Wage Order applicable to the Montauk Yacht Club (12 N.Y.C.R.R. § 146-1.6), there is no requirement that an employee earn the minimum wage in order to be entitled to spread of hours pay.**

Under 12 N.Y.C.R.R. § 146-1.6(d), on which the Plaintiffs' complaint is based, there is absolutely no requirement that an employee earn the minimum wage in order to be entitled to spread of hours pay. *Yuquilema v. Manhattan's Hero Corp.,* 2014 U.S. Dist. LEXIS 120422, 10-12 (S.D.N.Y. Aug. 26, 2014); *Angamarca v. Pita Grill 7 Inc.,* 2012 U.S. Dist. LEXIS 108322, 17, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012); *Singh v. Patel,* 2013 U.S. Dist. LEXIS 72619, 2013 WL 2190153, n. 1 (E.D.N.Y. May 16, 2013). 12 N.Y.C.R.R. § 146-1.6(d) requires that all employees of hospitality industry, which includes all-year hotels, receive spread of hours compensation regardless of given employee's regular rate of pay, in contrast to 12 N.Y.C.R.R. § 142-2.4, which applies to miscellaneous industries and occupations, and which does not ensure additional compensation to employees whose wages sufficiently exceed the minimum wage. *Flores v. Anjost Corp.,* 284 F.R.D. 112, 118 (S.D.N.Y. 2012).

**2. THE MONTAUK YACHT CLUB DOES NOT MEET THE DEFINITION OF A RESORT HOTEL BECAUSE IT IS NOT LOCATED IN AN INCORPORATED VILLAGE, AND IS THEREFORE NOT EXEMPT FROM THE HOSPITALITY INDUSTRY SPREAD OF HOURS REQUIREMENT.**

    **1.1.** **An employer bears the burden of proving an exemption from the New York Labor Law, and statutory exemptions are to be narrowly construed against the employer.**

5

The New York Labor Law is a remedial statute designed to combat and eliminate employment "at wages insufficient to provide adequate maintenance for [the employees] and their families." N.Y. Lab. Law § 650. *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 399 (E.D.N.Y. 2014). In light of the remedial purpose of the New York Labor Law, the statutory exemptions [are] narrowly construed against the employer. *Id; Ruggles v. Wellpoint, Inc.*, 272 F.R.D. 320, 329 n.6 (N.D.N.Y. 2011); *See also Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445, 464 (W.D.N.Y. 2010)(imposing burden of establishing exemption from to Labor Law claim on employer).

    **1.2.**    **In order to be exempt from the Hospitality wage order as a "resort hotel", the Montauk Yacht Club must establish that it is located in a "rural community or in a city or village of less than 15,000 population." 12 N.Y.C.R.R. § 146-3.l(c)(3)(ii) and (iii).**

The Hospitality Industry spread of hours pay requirement by its terms only applies to restaurants and "all-year hotels." § 146-1.6(d). "An all-year hotel is one that does not qualify as a resort hotel." § 146-3.1(c)(2).

The Defendant contends that it meets the definition of a resort hotel under § 146-3.1(c)(2), which provides:

> A resort hotel is one which offers lodging accommodations of a vacational nature to the public or to members or guests of members, and which: … (ii) **being located in a rural community or in a city or village of less than 15,000 population,** increased its number of employee workdays during any consecutive four-week period by at least 100 146-18 percent over the number of employee workdays in any other consecutive four-week period within the preceding calendar year… [emphasis supplied].

    **1.3.**    **Under the New York General Construction Law § 54, "village" means "incorporated village."**

The New York General Construction Law defines terms that are widely used in New York State law. "The General Construction Law should be read into every statute subsequently enacted unless the wording of such later statute plainly expresses a contrary intent." *O'Keeffe v. Dugan*, 185 A.D. 53, 54, 172 N.Y.S. 558, 559 (App. Div. 1918) *aff'd* 225 N.Y. 667, 122 N.E.

6

887 (1919); *See also Brustein v. New Amsterdam Cas. Co.*, 135 Misc. 352, 353, 238 N.Y.S. 313, 314 (Sup. Ct. 1929) *rev'd on other grounds* 255 N.Y. 137, 174 N.E. 304 (1931); N.Y. General Construction Law § 110 ("This chapter is applicable to every statute unless…a different meaning or application was intended from that required to be given by this chapter).

According to the New York General Construction Law, "[t]he term village means an incorporated village." § 54.

**1.4. As a matter of law, Montauk is not a "village"**

Montauk is the name of a place. It is no more a village than Sunnyside, Queens, or Greenwich Village, New York.

According to the Montauk Yacht Club's website, the hotel is located "in the East Hampton **hamlet** of Montauk…" http://www.montaukyachtclub.com/about-myc/ (last visited Jan. 29, 21015)(emphasis added)[6]. Finally, its parent company, IGY Marinas, also admits that "[t]he Montauk Yacht Club Resort & Marina is located along the **Hamlet** of Montauk in New York's Long Island." http://www.igymarinas.com/ marinas/new-york-33687300/ (last visited Jan. 30, 2015)(emphasis added)[7]. The Defendant's websites are correct: Montauk is a Hamlet. *See* New York State Department of Health, New York State Gazetteer 37 (1995)[8].

Case law within the Eastern District has also recognized that Montauk is not a village.

> [T]he "South Fork"[], contains, inter alia, the [] Town of East Hampton, which is comprised of the Village of East Hampton, a portion of the Village of Sag Harbor and **a number of unincorporated hamlets, including Montauk**, the easternmost area of the Town.

---

[6] A printout of the relevant page of the Montauk Yacht Club website is annexed to the Declaration of Steven John Moser as Exhibit 2.
[7] A printout of the relevant page of the Island Global Yachting website is annexed to the Declaration of Steven John Moser as Exhibit 3.
[8] Relevant pages of this official New York State Publication are annexed to the Declaration of Steven John Moser as Exhibit 4.

*Francarl Realty Corp. v. Town of E. Hampton,* 628 F. Supp. 2d 329, 331 (E.D.N.Y. 2009) (Feuerstein, J.)(emphasis supplied).

### 1.5. The plain language of New York General Construction Law § 54 is unambiguous, and should not be disregarded.

"Statutory analysis begins with the text and its plain meaning, if it has one." *Gottlieb v. Carnival Corp.,* 436 F.3d 335, 337 (2d Cir. 2006). "[I]f an attempt to discern the plain meaning fails because the statute is ambiguous," *Green v. City of New York,* 465 F.3d 65, 78 (2d Cir. 2006), "we resort to the canons of statutory construction to help resolve the ambiguity." *Gottlieb,* 436 F.3d at 337.

Here, the inquiry begins and ends with the plain meaning of the statute.

In *People v. Patenaude,* 206 Misc. 347, 132 N.Y.S.2d 833 (Sup. Ct. 1954), the Saratoga County Supreme Court was confronted with the interpretation of section 63 the New York Conservation Law, which provided that lands located within the county of Saratoga and acquired by the State of New York would be included in the New York forest preserve unless they were located "within the limits of any village or city…" The State had acquired two lots which were located in what would commonly be considered a "city" or a "village." *Patenude,* 206 Misc. at 349, 132 N.Y.S.2d at 834 (The lots "are located in a highly populated community directly north of the city line of the city of Mechanicville and have paved streets, sewer and water districts, a public school, stores, private residences and commercial plants."). However, the two lots were not located in an "incorporated village."

The court rejected the notion that the plain meaning of the General Construction Law should be disregarded simply because the parcels were located in a *village-like* or *city-like* environment:

> The lands we are concerned with here are not within the limits of any village or city. The term "village" means an incorporated village. (General Construction Law, § 54)… This

8

is so, notwithstanding the lots are unsuited and impracticable to be in fact forever kept as wild forest lands in that they are located in a highly populated community.

*Patenaude,* 206 Misc. at 355, 132 N.Y.S.2d at 840.

A similar result was reached by the Putnam County Supreme Court in *Putnam Cnty. Nat'l Bank v. Albright,* 87 Misc. 2d 391, 384 N.Y.S.2d 669 (Sup. Ct. 1976). The court was faced with the interpretation of the New York Banking Law § 240(2)(b), which contains language similar to 12 N.Y.C.R.R. §146-1.6. That section prohibited the opening of a savings bank branch office in any "city or village with a population of 50,000 or less", when the city or village already contained the principal office of a bank. N.Y. Banking Law § 240(2)(b). *Albright,* 87 Misc. 2d at 392, 384 N.Y.S.2d at 670.

The Putnam County National Bank challenged the decision of Harry W. Albright, Jr., Superintendent of Banks of the State of New York, which gave the Mid-Hudson Savings Bank permission to open a branch office in Carmel, New York. *Id.* The Putnam County National Bank argued that Carmel was a "village with a population of 50,000" or less, and that therefore the Superintendent Albright should not have given permission to Mid-Hudson to open a branch in the unincorporated village of Carmel. *Id.*

The court observed,

[i]n the absence of a statutory definition, the word "village" has been given a common rather than a technical meaning. It has been defined as "merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group." … In section 54 of the General Construction Law, a village is defined to mean an incorporated village. The General Construction Law specifically applies to every statute unless a contrary intention is indicated. (General Construction Law, § 110.) Thus, "village" does have a specific meaning in the Banking Law.

*Id.* at 394.

Just as "village" has a specific meaning in the Banking Law, it has a specific meaning in the Labor Law – "incorporated village."

9

> **1.6.    Ignoring the plain meaning of the law by exempting hotels located in hamlets with a population of less than 15,000 would lead to absurd results.**

If the Defendant re-writes the regulation to exempt not only hotels located in villages and cities, but also those located in hamlets with a population of less than 15,000, hotels located in very densely populated areas would possibly be exempt from the hospitality wage order.

Nassau County is of the most densely populated areas of the United States and has a population of approximately 5,000 people per square mile. http://quickfacts.census.gov/qfd/states/36/36059.html (last visited January 29, 2015).

If the law is re-written to exclude a hotel located in a hamlet with a population of less than 15,000, then a hotel located in any of the following communities in Nassau County could also be exempt from the Hospitality Wage Order as a "resort hotel":  Albertson, Baldwin Harbor, Carle Place, Greenvale, Harbor Hills, Herricks, Hewlett, Inwood, Jericho, Old Bethpage, Oyster Bay Hamlet, Plainedge, Point Lookout, Roslyn Heights, Salisbury, Garden City East, East Norwich, Garden City South, Glen Head, Glenwood Landing, Great Neck Gardens, Lido Beach, Locust Valley, Manhasset Hills, Manhasset, New Cassel, North Lynbrook, South Farmingdale, South Hempstead, South Valley Stream, University Gardens and Woodbury.  Each of these locations is a hamlet with a population of less than 15,000. *See* http://en.wikipedia.org/wiki/List_of_places_in_Nassau_County,_New_York.

### 3. UPON THE COURT'S DECISION ON THE DEFENDANT'S RULE 12 MOTION, THE PLAINTIFF REQUESTS AN ORDER COMPELLING ARBITRATION.

For the purposes of this proceeding, both parties have agreed that this Court is empowered to issue a decision on the Defendant's Rule 12 motion.   The Defendant has explicitly requested that the Court dismiss the Complaint with prejudice. Def. MOL at 1.   The Plaintiff also joins in the request that this Court issue a decision with regard to the Defendant's

10

Rule 12 motion. If the motion is denied, the Plaintiff further joins in the Defendant's request that the matter be referred to arbitration.

A decision on the merits of the Defendant's Rule 12 motion is necessary in order to avoid prejudice to the Plaintiff. If the Court merely compels arbitration, the Defendant will have two chances to make a dispositive Rule 12 motion – once to the Court, and again to an arbitrator. This would result in prejudice to the Plaintiff because the Plaintiff will be forced to re-litigate the merits of the Plaintiff's claims a second time in arbitration. This type of re-litigation is frowned upon by the Second Circuit. *See Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir. 1991). The purpose of arbitration is "that disputes be resolved with dispatch and with a minimum of expense." *Com-Tech Assocs. v. Computer Assocs. Int'l,* 938 F.2d 1574, 1578 (2d Cir. 1991). An order resolving the Rule 12 motion, and if appropriate, compelling arbitration is the most appropriate way of proceeding.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny the Defendant's Rule 12 motion, and if the motion is denied, ordering the case to proceed in class arbitration.

Dated: March 6, 2015
       Glen Cove New York

                                          STEVEN J. MOSER, P.C.

By: _____
      Steven J. Moser (SM 6628)
      3 School Street, Suite 207B
      Glen Cove, New York 11542
      (516) 671-1150
      (516) 882-5420 (fax)