UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

THOMAS MICHAEL KING, individually and on    :
behalf of all others similarly situated,

                                    :

                    Plaintiff,    :

                                    :

            -against-                 :      No. 14-CV-6235(LDW)(GRB)

                                    :

MYC RESORT, LLC d/b/a MONTAUK YACHT     :
CLUB,

                                    :

                    Defendant.    :

                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Dated:  New York, New York
          April 13, 2015

Aaron Warshaw
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

*Attorney for Defendant*
*MYC Resort LLC*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ............................................................................................ 1

II. ARGUMENT ................................................................................................................. 2

    A.  PLAINTIFF HAS NOT REFUTED THAT MYC IS A "RESORT HOTEL" AND
       THEREFORE EXEMPT FROM THE HOSPITALITY REGULATION'S
       SPREAD OF HOURS LAW ....................................................................................... 2

       1.  Plaintiff Attempts to Impermissibly Shift His Pleading Burden ........................... 2

       2.  Plaintiff's Attempt to Narrowly Restrict the Definition of a "Resort Hotel" ........ 3

          a.  The Hospitality Regulation's Plain Language .................................................. 3

          b.  Legislative History ........................................................................................ 5

          c.  Application ..................................................................................................... 6

          d.  Plaintiff's Meritless Legal Support ............................................................... 8

    B.  ANY FURTHER PROCEEDINGS SHOULD BE BEFORE ARBITRATION ........... 9

III. CONCLUSION ............................................................................................................. 9

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
    712 F.3d 775 (2d Cir. 2013)......................................................................................4

*Dole v. United Steelworkers of Am.*,
    494 U.S. 26 (1990)......................................................................................................4

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003)....................................................................................................7

*Harbison v. Bell*,
    556 U.S. 180 (2009)....................................................................................................7

*Lundy v. Catholic Health Sys. of Long Isl., Inc.*,
    711 F.3d 106 (2d Cir. 2013)......................................................................................3

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    No. 10-CV-2661(PAC), 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011)......................3

*Pavelic & LeFlore v. Marvel Entm't Group, Div. of Cadence Indus. Corp.*,
    493 U.S. 120 (1989)....................................................................................................7

*People v. Patenaude*,
    206 Misc. 347, 132 N.Y.S.2d 833 (N.Y. Sup. Ct. 1954) ..........................................8

*Putnam Cty. Nat'l Bank v. Albright*,
    87 Misc.2d 391, 384 N.Y.S.2d 669 (N.Y. Sup. Ct. 1976) ....................................8, 9

*Town of Southold v. Town of East Hampton*,
    477 F.3d 38 (2d Cir. 2007)........................................................................................6

*TVA v. Hill*,
    437 U.S. 153 (1978)....................................................................................................7

STATUTES, RULES AND REGULATIONS

Fed. R. Civ. P. 12 ............................................................................................................1

N.Y. Gen. Construction Law § 110 ................................................................................5

12 N.Y.C.R.R. § 142-2.4 ................................................................................................1

12 N.Y.C.R.R. § 146.......................................................................................... *passim*

**OTHER AUTHORITIES**

2010-42 N.Y. St. Reg. 21..................................................................................................5

*New York Dep't of Labor, Hospitality Wage Order Frequently Asked Questions*, .......................4
    *available at* http://labor.ny.gov/legal/counsel/pdf/hospitality-wage-order-
    frequently-asked-questions.pdf

*New York: Population and Housing Unit Counts*, ......................................................................7
    *available at* http://www.census.gov/prod/cen2010/cph-2-34.pdf

## I. **PRELIMINARY STATEMENT**

MYC respectfully submits this Reply Memorandum of Law in further support of its Rule 12(b)(6) and Rule 12(c) Motion to Dismiss Plaintiff's Complaint.[1]

Plaintiff's Response Brief amounts to little more than a desperate attempt to resurrect his frivolous wage claim.  At the outset, it is undisputed that there are two applicable spread of hours laws under the NYLL: the first, 12 N.Y.C.R.R. § 142-2.4, applies to miscellaneous industries and occupations (the "Miscellaneous Regulation"); and the second, 12 N.Y.C.R.R. § 146-1.6, applies to certain employees in the hospitality industry (the "Hospitality Regulation").  (Pl.'s Br. at 2-4.) As Plaintiff now admits, he has not alleged – and cannot allege – a viable spread of hours claim under the Miscellaneous Regulation because he earned more than twice the minimum hourly wage, and therefore he was ineligible to receive spread of hours pay under the controlling law of this District.  (Pl.'s Br. at 3) (citing Def.'s Br. at 6-9).

Plaintiff instead argues that he is entitled to spread of hours wages under the Hospitality Regulation.  However, MYC is exempt from this spread of hours requirement because it meets the statutory definition of a "resort hotel" as a matter of law.  (Def.'s Br. at 9.)  Under the Hospitality Regulation, an exempt "resort hotel" is one that: (a) offers lodging accommodations of a vacational nature to the public or to members or guests of members; (b) is located in a rural community or in a city or village of less than 15,000 population; and (c) undergoes at least a 100% increase of employee workdays or guest stays during the course of any four-week period. 12 N.Y.C.R.R. § 146-3.1(c)(3)(ii)-(iii).  Plaintiff again concedes that MYC meets the first and third elements of the definition of a "resort hotel."  Plaintiff instead focuses on a narrow legal

---

[1]      The abbreviated and capitalized terms used in this reply are defined in "Defendant's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint" ("Def.'s Br."). "Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Under Fed. R. Civ. P. 12" is cited herein as "Pl.'s Br."

issue to dispute: whether MYC is located in a rural community or in a city or village of less than 15,000 population.

To avoid the inevitable dismissal of his case, Plaintiff bizarrely argues that, because Montauk is not an "incorporated village," it *per se* cannot meet the statutory definition of an exempt "resort hotel."  (Pl.'s Br. at 6-9.)  Yet, as explained in greater detail below, Plaintiff's argument is wholly against the plain legislative intent of the Hospitality Regulation, not to mention basic grammar and common sense.  Nor can Plaintiff cite to any controlling precedent to support his extremely narrow reading of the Hospitality Regulation.  In the end, the Court should decline Plaintiff's invitation to create new – and nonsensical – law.  The Court should instead dismiss Plaintiff's Complaint because MYC meets the statutory definition of a "resort hotel," and is therefore plainly exempt from the Hospitality Regulation's spread of hours requirement.

Lastly, as Plaintiff admits, he is subject to binding arbitration agreements.  To the extent that the Court *arguendo* declines to dismiss the Complaint with prejudice, which it should not do, the parties agree that the proper forum for any further litigation is binding arbitration.

## II.  ARGUMENT

**A.  PLAINTIFF HAS NOT REFUTED THAT MYC IS A "RESORT HOTEL" AND THEREFORE EXEMPT FROM THE HOSPITALITY REGULATION'S SPREAD OF HOURS LAW**

### 1.    Plaintiff Attempts to Impermissibly Shift His Pleading Burden

Plaintiff first argues that MYC bears the burden of proving that it is an exempt "resort hotel" under the Hospitality Regulation.  (Pl.'s Br. at 6.)   Yet, it is axiomatic that Plaintiff bears the pleading burden of laying a "factual foundation for determining the viability of" his NYLL spread of hours claim.  (Def.'s Br. at 5) (quoting *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, No. 10-CV-2661(PAC), 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011), *aff'd*, 723 F.3d 192 (2d Cir. 2013)).  As the Second Circuit has emphasized, Plaintiff must do more than

supply "low-octane fuel for speculation" to meet this pleading standard.   *Lundy v. Catholic Health Sys. of Long Isl., Inc.*, 711 F.3d 106, 115 (2d Cir. 2013).   However, Plaintiff's Complaint utterly fails to support his conclusory assertion that MYC was an "all-year hotel" within the ambit of the Hospitality Regulation.   (Compl., ¶ 4.)   Plaintiff has not sought to amend his Complaint, and for that reason alone, Plaintiff's Complaint fails to meet his pleading burden and should be dismissed.

### 2.   Plaintiff's Attempt to Narrowly Restrict the Definition of a "Resort Hotel" Is Without Any Merit and Should Be Rejected

The sole dispositive issue that Plaintiff raised in his Response Brief, (Pl.'s Br. 6-10), is whether MYC is "located in a rural community or in a city or village of less than 15,000 population."   12 N.Y.C.R.R. § 146-3.1(c)(3)(ii)-(iii).   At the outset, it is important to note that Plaintiff admits that MYC is located in the unincorporated hamlet of Montauk, (Pl.'s Br. at 7), and he does not dispute that Montauk's population is 3,326.   (Def.'s Br. at 3.)   Faced with these inexorable facts, Plaintiff instead fabricates a nonsensical argument that – because Montauk is an unincorporated hamlet and not an incorporated village – it *per se* cannot meet the statutory exemption of a "resort hotel."   (Pl.'s Br. 6-8.)   Plaintiff's argument is against the clear legislative intent of the Hospitality Regulation, and is contrary to basic rules of grammar and statutory interpretation.

### a.   The Hospitality Regulation's Plain Language

Although no court has previously interpreted the relevant regulatory language, this Court must merely examine the law's plain meaning.   (Pl.'s Br. at 8.)   However, Plaintiff flatly ignores that the Hospitality Regulation defines a "resort hotel" as being "located in a rural community **or** in a city or village of less than 15,000 population."   12 N.Y.C.R.R. § 146-3.1(c)(3)(ii)-(iii) (emphasis added); *see also* New York Dep't of Labor, Hospitality Wage Order Frequently Asked

Questions, *available at* http://labor.ny.gov/legal/counsel/pdf/hospitality-wage-order-frequently-asked-questions.pdf (same definition).

Notably, the Hospitality Regulation does not set off the clause "or in a city or village" with a comma.   12 N.Y.C.R.R. § 146-3.1(c)(3)(ii)-(iii).   This is important because, under the conventions of grammar and statutory interpretation, the modifier "of less than 15,000 population" must be read to only modify the phrase "in a city or village," but it does not modify the phrase "in a rural community."   *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712  F.3d 775, 782 (2d Cir. 2013) ("When there is no comma, . . . the subsequent modifier is ordinarily understood to apply only to its last antecedent."). Further, the canon of statutory construction *noscitur a sociis* (a word is known by the company it keeps) "dictates that words grouped in a list should be given related meaning." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (quotations omitted).   Rather than adhere to these fundamental concepts of statutory interpretation, Plaintiff instead attempts to narrowly parse out the Hospitality Regulation to mean that ***only incorporated cities and villages with population less than 15,000*** are exempt from the spread of hours requirement.   This extremely narrow interpretation is without any merit.

Instead, under the law's plain language, the Hospitality Regulation plainly exempts resort hotels that are located: (i) in a rural community; **or** (ii) in a city or village of less than 15,000 population.   12 N.Y.C.R.R. § 146-3.1(c)(3)(ii)-(iii).   Plaintiff nonetheless argues that a "village" can only mean an "incorporated village," (Pl.'s Br. at 6) (citing N.Y. Gen. Construction Law § 110), and that Montauk is a hamlet and not an incorporated village, (Pl.'s Br. at 7).   In essence, Plaintiff makes a nonsensical leap that Montauk *per se* cannot be covered by the exemption because it is not an incorporated village.   Yet, had the drafters intended to limit the Hospitality Regulation exemption to ***only*** incorporated cities or villages, then the law would have included

4

the word "incorporated" and it would not have included the phrase "in a rural community." Put another way, Plaintiff's reading of the law is that the exemption *only* applies to incorporated cities and villages, (Pl.'s Br. at 6-7), whereas the exemption's plain language covers hotels located in rural communities *or* in cities or villages of less than 15,000 population. Because Montauk is a hamlet and not an incorporated village, then a plain reading of the law is that Montauk meets the statutory definition of a "rural community" and is therefore exempt. In the alternative, a plain reading is that the drafters simply intended the phrase "city and village" in their colloquial sense, as settlements or communities. Under either interpretation, the drafters plainly intended the Hospitality Regulation to exclude hotels located in sparsely populated communities such as Montauk.

### b.    Legislative History

The Hospitality Regulation's legislative history supports Defendant's plain and straightforward reading of the law. In 2010, the New York State Department of Labor (the "NYSDOL") issued a rulemaking report prior to adoption of 12 N.Y.C.R.R. § 146, which specifically considered and sought to diminish the impact of the wage regulation on rural areas. 2010-42 N.Y. St. Reg. 21 (attached as Exhibit A to the Reply Declaration of Aaron Warshaw ("Warshaw Reply Decl.")). In particular, prior to adopting 12 N.Y.C.R.R. § 146, the NYSDOL conducted a "Rural Area Flexibility Analysis" that noted, *inter alia*, "the available data demonstrates that the hospitality industry is located throughout rural areas of the State." *Id*. Indeed, the language at issue here was first proposed and adopted by the NYSDOL in the 1940s as part of a predecessor regulation. (Warshaw Reply Decl., Ex. B) (Public Notice dated June 17, 1947). Clearly then, the NYSDOL has long sought to diminish the financial impact of the spread of hours law on less populous areas where, as is the case with MYC, labor is often at a shortage.

Had the drafters intended to limit the exemption to only incorporated cities and villages, as Plaintiff argues, then this intent would have appeared in the legislative history, which it does not.

### c. Application

Applying these principles here, Montauk is routinely considered a distinct community apart from the incorporated villages and unincorporated hamlets that surround it. As the Second Circuit aptly described this area: "The South Fork contains, inter alia, the Town of East Hampton. East Hampton, in turn, consists of the Village of East Hampton, a part of the Village of Sag Harbor, and a number of unincorporated hamlets, including Montauk in the easternmost region." *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 42-43 (2d Cir. 2007) (emphasis added). Just as Stephen Dedalus imagined himself to be located in "Clongowes Wood College / Sallins / County Kildare / Ireland / Europe / The World / The Universe," James Joyce, A PORTRAIT OF THE ARTIST AS A YOUNG MAN at 1, MYC is located within the unincorporated hamlet of Montauk, which in turn is located within the Town of East Hampton, which in turn is located within Suffolk County. However, the relevant community for the purposes of analyzing the Hospitality Regulation exemption is plainly Montauk.

Notably, Plaintiff does not argue that the relevant community under the Hospitality Regulation is the Town of East Hampton, nor could he. That is because East Hampton is a "town" and therefore any hotels located within its borders could ***never*** be exempted under Plaintiff's extremely narrow view, because the Town of East Hampton is neither a "city" nor a "village." Indeed, the Town of East Hampton includes the incorporated Village of East Hampton[2] and the Village of Sag Harbor, as well as other unincorporated hamlets: Amagansett, Napeague, Springs, and Wainscott. (Warshaw Decl., Ex. C) (U.S. Census, Suffolk County

---

[2] Somewhat confusingly, the Village of East Hampton is located within the Town of East Hampton, although they are distinct entities.

American Indian Areas, Counties, County Subdivisions, and Places).   A plain reading of the Hospitality Regulation's intent is that each of these communities should be examined separately to determine whether they meet the definition of a "resort hotel."

Plaintiff nonetheless argues that a plain reading of the Hospitality Regulation would lead to a number of unincorporated hamlets throughout Nassau County also being exempted.  (Pl.'s Br. at 10.)  However, the "Court's interpretive function requires it to identify and give effect to the best reading of the words in the provision at issue.  Even if the proper interpretation of a statute upholds a 'very bad policy,' it 'is not within [a court's] province to second-guess' the 'wisdom of [regulatory] action' by picking and choosing [the court's] preferred interpretation from among a range of potentially plausible, but likely inaccurate, interpretations of a statute." *Harbison v. Bell*, 556 U.S. 180, 198 (2009) (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 222 (2003)); *see also TVA v. Hill*, 437 U.S. 153, 194 (1978) ("Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the [regulator] is to be put aside in the process of interpreting a statute.").   Indeed, the Court's "task is to apply the text, not to improve upon it."   *Pavelic & LeFlore v. Marvel Entm't Group, Div. of Cadence Indus. Corp.*, 493 U.S. 120, 126, (1989).  As explained *supra*, the plain language of the statute mandates that MYC be exempted.

Even if the Court were to superimpose its judgment for the NYSDOL, which it should not do, Plaintiff's proposed reading would lead to far more absurd results.  As noted, Montauk's neighbors within the Town of East Hampton include: the incorporated Village of East Hampton, which has a population of 1,083; and the incorporated Village of Sag Harbor, which has a population of 2,169.  New York: Population and Housing Unit Counts, at 62, 94, *available at* http://www.census.gov/prod/cen2010/cph-2-34.pdf.  Even under Plaintiff's strict view, he would

have to concede that hotels located within the incorporated villages of East Hampton and Sag Harbor are exempt from the Hospitality Regulation (provided that the meet the other statutory requirements).  Yet, simply because Montauk is a "hamlet" and not an "incorporated village," Plaintiff would have the Court impose the spread of hours law, even though the NYSDOL plainly intended to exempt resort hotels "located in rural communities" such as Montauk.  This is a patently arbitrary result and should be rejected.

### d.     Plaintiff's Meritless Legal Support

Plaintiff's supposed legal support is inapposite.  (Pl.'s Br. at 8-9.)  First, in *People v. Patenaude*, 206 Misc. 347, 132 N.Y.S.2d 833 (N.Y. Sup. Ct. 1954), the Supreme Court, Special Term, merely held that certain property was part of a "forest preserve" because it fell outside of incorporated village limits.  Even assuming that New York's forest preservation law was analogous to the NYLL, which it is not, the parties are in agreement that MYC is located within an unincorporated hamlet and not within a incorporated village.  As such, *Patenaude* provides no support for Plaintiff's position whatsoever.

Similarly, in *Putnam Cty. Nat'l Bank v. Albright*, 87 Misc.2d 391, 384 N.Y.S.2d 669 (N.Y. Sup. Ct. 1976), New York's banking law prohibited the opening of a savings bank branch office "in any city or village with a population of 50,000 or less."  Even assuming *arguendo* that New York's banking law is applicable to the NYLL, which it is not, this case merely supports Plaintiff's position.  The banking law in *Albright* specifically limited its application to locations within "any city of village."  Thus, the drafters sought to affirmatively prohibit banks from being placed within cities or villages.  In contrast, the Hospitality Regulation ***exempts*** hotels "located in a rural community **or** in a city or village of less than 15,000 population."  12 N.Y.C.R.R. § 146-3.1(c)(3)(ii)-(iii) (emphasis added).  Again, the Hospitality Regulation drafters included the

phrase "rural community," which shows that the exemption was intended to be broader than the bright-line banking law in *Albright*.  As such, *Albright* merely reinforces that lawmakers know how to draft laws either broadly or narrowly.

For the foregoing reasons, the Court should decline Plaintiff's invitation to make new law, and should instead grant MYC's motion to dismiss with prejudice because it is a "resort hotel" and therefore exempt from the Hospitality Regulation's spread of hour requirement.

**B.      ANY FURTHER PROCEEDINGS SHOULD BE BEFORE ARBITRATION**

Plaintiff concedes that the proper forum for any further litigation is arbitration.  (Pl.'s Br. at 11.)   Assuming *arguendo* that the Court denies MYC's motion seeking to dismiss the Complaint with prejudice, which it should not do, in that event the parties are in agreement that the case should be administratively closed so that they may proceed with further litigation in arbitration.

### III.      CONCLUSION

For the foregoing reasons, as well as the reasons in its Opening Brief, MYC respectfully requests that: (1) the Court dismiss the Complaint in its entirety and with prejudice or, in the alternative, compel arbitration; and (2) award to MYC such other and further relief as the Court deems appropriate, including its fees and expenses.

Dated:  New York, New York  
      April 13, 2015

Respectfully submitted,

OGLETREE, DEAKINS, NASH,  
 SMOAK & STEWART, P.C.

By s/ Aaron Warshaw         
    Aaron Warshaw  
1745 Broadway, 22nd Floor  
New York, New York 10019  
(212) 492-2500

*Attorney for Defendant*